# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLEVELAND MEDICAL DEVICES INC., an Ohio Corporation, <br><br> Plaintiff, <br><br> v. <br><br> RESMED INC., a Delaware Corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 22-794-GBW |

## PLAINTIFF CLEVELAND MEDICAL DEVICES INC.'S
## NOTICE OF 30(b)(6) DEPOSITION OF DEFENDANT RESMED INC.

**PLEASE TAKE NOTICE** that Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the applicable Local Rules of the District Court for the District of Delaware, Plaintiff Cleveland Medical Devices Inc. ("Plaintiff" or "CleveMed"), by and through their undersigned attorneys, will take the deposition of Defendant ResMed Inc. ("ResMed" or "Defendant").

The deposition will commence at 9:30 AM ET on June 14, 2023, at the offices of Kramer Levin Naftalis & Frankel LLP at 333 Twin Dolphin Drive, Suite 700, Redwood Shores, California 94065, or at such other time and place as counsel may mutually agree. The deposition will take place in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, and under oath and before a notary public or other officer authorized to administer oaths under law. The deposition will be taken in person and recorded by stenographic and/or audio-and-videographic means, and will continue from day to day until completed.

1

**Exhibit 1**
**Pg. 1**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 30(b)(6), Defendant shall designate one or more officers, directors, managing agents or other persons who are most knowledgeable concerning each of the topics set forth below.  In addition, Defendant is requested to provide Plaintiff's counsel with written notice, at least two weeks in advance of the deposition, of the name and employment position of each designee who will testify on behalf of Defendant, and the topics set forth below as to which each designee has agreed to testify.

## DEFINITIONS

1. The terms "ResMed," "You," "Your," and "Defendant" shall mean ResMed Inc., its present and former directors, officers, employees, parent organization(s), subsidiary organization(s), predecessors in interest, successors in interest, divisions, servants, agents, attorneys, consultants, partners, associates, investigators, representatives, accountants, financial advisors, distributors and any other person acting on its behalf, pursuant to its authority or subject to its control, including any and all joint ventures or other legal entities of any type whatsoever in which ResMed owns or owned any interest, receives or received any payments, and/or participated or now participates in any manner.

2. The term "CleveMed, Inc.," "CleveMed," or "Plaintiff" shall mean Cleveland Medical Devices, Inc.

3. The term "This Case" shall mean the above-captioned proceeding at the United States District Court for the District of Delaware, *Cleveland Medical Devices, Inc. v. ResMed Inc.*, Case No.: 22-794(GBW).

4. The term "Asserted Patents" shall mean U.S. Patent Nos.: 10,076,269 (the "'269 Patent"), 10,426,399 (the "'399 Patent"), 10,925,535 (the "'535 Patent"), 11,064,937 (the "'937 Patent"), 10,028,698 (the "'698 Patent"), 11,202,603 (the "'603 Patent"), and 11,234,637 (the

"'637 Patent"), and any other patent asserted in this Action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

5.      The term "Accused Functionality" means any functionality of the Accused Products that has been identified as satisfying (in part or in whole) any element of any Asserted Patent claim in CleveMed's January 9, 2023 infringement contentions, April 24, 2023 supplemental infringement contentions, and in any supplement thereof.

6.      The term "Accused Products" shall mean Defendant's sleep solutions utilizing devices and software technologies to provide at-home or remote sleep-disordered breathing or apnea testing, and treatment monitoring and/or adjustment, including (1) Defendant's Positive Airway Pressure ("PAP") Solution and Devices and (2) Defendant's Home Sleep Testing ("HST") Solution. This includes additional or new products that Defendant makes, uses, sells, offers for sale, or imports with the infringing technologies as disclosed in CleveMed's January 9, 2023 infringement contentions, April 24, 2023 supplemental infringement contentions, and in any supplement thereof.

7.      Defendant's "PAP Solution" shall mean Defendant's PAP devices and software platforms such as myAir App, U-Sleep, AirMini App, ResScan; the Air10 Oximetry Module, the ResMed Connectivity Module, the AirView Cloud Platform; and all related and subsequent platforms as disclosed in CleveMed's January 9, 2023 infringement contentions, April 24, 2023 supplemental infringement contentions, and in any supplement thereof.

8.      Defendant's "PAP Devices" shall mean: the AirSense 10 CPAP, Elite, AutoSet, and AutoSet for Her devices (collectively "AirSense 10 devices"); the AirSense 11 CPAP, Elite, and AutoSet devices (collectively "AirSense 11"); the AirCurve 10 S, ST, VAuto, and ASV devices (collectively "AirCurve 10 devices"); the Stellar 100 and 150 devices  (collectively

"Stellar Devices") ; the Astral 100 and 150 devices (collectively "Astral Devices"); and the AirMini CPAP, AutoSet, and AutoSet for Her devices (collectively "AirMini Devices"); and all related and subsequent models as disclosed in CleveMed's January 9, 2023 infringement contentions, April 24, 2023 supplemental infringement contentions, and in any supplement thereof.

9. Defendant's "HST Solution" shall consist of Defendant's ApneaLink Air device; and software platforms such as ApneaLink PC Software, and the AirView Cloud Platform; and all related and subsequent platforms as disclosed in CleveMed's January 9, 2023 infringement contentions, April 24, 2023 supplemental infringement contentions, and in any supplement thereof.

10. The term "document(s)" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and shall include within its meaning any and all papers, videotapes or video recordings, photographs, films, recordings, memoranda, books, records, accounts, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writing or by means of any mechanical or electrical recording device, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of the foregoing whether denominated formal, informal, or otherwise, as well as copies of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes the information stored in any form, including electronic form, on a computer or in a computer database or

otherwise, including electronic mail.  Moreover, the term "document" shall also include all "technical documents," such as source code, specifications, schematics, flow charts, artwork, drawings, pictures, pictorial representations, formulas, troubleshooting guides, service bulletins, technical bulletins, production specification sheets, white papers, operator manuals, operation manuals, and instruction manuals.  The term "document" shall additionally include content located or transmitted in project management or collaboration platforms (e.g. Slack, Trello, Confluence, Telegram, Hightail, Azendoo, Bitrix24, eXo Platform, Google Drive, Google Docs, Google Sheets, Google Hangouts, SharePoint, One Drive), or any similar project management or collaboration tools, the content including, but not limited to, text messages, group messages, chats, forums, revision history, documents, and technical documents.

11. The term "communication" shall mean, including its usual and customary meaning, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand, or question by any medium, whether by written, oral, or other means, including, but not limited to, electronic communications and electronic mail.

12. The term "thing" shall mean any tangible object, other than a document.

13. The terms "relate to," "reflecting," "relating to," "concerning," or any variations thereof, shall mean relating to, referring to, concerning, mentioning, reflecting, regarding, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), or are between (as in the context of communications), as the context makes appropriate.

14. The term "describe" shall mean, in addition to its usual and customary meaning, to identify all persons with knowledge of the information sought in the interrogatory and to

5

Exhibit 1
Pg. 5

identify all documents referring, regarding or relating to the information sought in the interrogatory.

15.  The term "identify" means, when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subsubsection, only the person's name need be listed in response to subsequent discovery requesting the identification of that person.  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipients(s).

16.  The term "including" shall mean including but not by way of limitation.

17.  The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18.  The term "any" shall mean "any and all" and the term "all" shall mean "any and all."

19.  The singular of any word or phrase shall include the plural of such word or phrase, and the plural of any word or phrase shall include the singular of such word or phrase.

**DEPOSITION TOPICS PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Pursuant to Fed. R. Civ. Proc. 30(b)(6), ResMed is required to designate one or more officers, directors, managing agents, or other persons to testify as to the information regarding the following matters that is known or reasonably available to ResMed.

6

Exhibit 1
Pg. 6

1. The conception, research, design, development, and operation of the Accused Products, including:

    a. The identification of all individuals involved in designing and developing the Accused Products and their specific roles, responsibilities, and contributions in designing and developing the Accused Products;

    b. All schematics, datasheets, technical specifications, and other technical documents for the Accused Products created by You or third parties in the course of designing, developing, or commercializing the Accused Products;

    c. The identification of all third parties who provided any assistance with respect to the design and development of the Accused Products and the specific nature of their assistance; and

    d. The identification of persons knowledgeable about such topic.

2. Separately for each of the Accused Products (including PAP Solution, PAP Devices, HST Solution), the structure, function, and operation of the Accused Product, including:

    a. All software and hardware components that are or have been used to provide any of the Accused Functionality;

    b. The structure, function, and operation of each component identified in response to Topic 2(a) above;

    c. The identification of all third parties who have provided any of the components identified in response to Topic 2(a) above; and

    d. The identification of persons knowledgeable about such topics.

3. The integration and operation of any API (Application Program Interface) relating to the myAir App, U-Sleep, AirMini App, ResScan, ApneaLink PC software, and AirView Cloud Platform.

4. The integration and operation of any Third Party technologies in the Accused Products, including any open source, licensed, or unlicensed technologies.

5. The source code for the Accused Products, and the identification of persons knowledgeable about the source code for the Accused Products.

6. Any commercial efforts to use the Accused Products and/or cloud solutions for remote patient monitoring and remote therapy monitoring.

7. The type(s) of controller ResMed uses to control the flow generation of the PAP Devices used in the Accused Products.

8. Identification of all Current Procedure Terminology ("CPT") codes that are currently or have been used with the Accused Products from July 2018 to present.

9. Identification, from July 2018 to present, of the current and previous rates of reimbursement by insurers for use of the Accused Products, where any part of the use occurs in the United States.

10. Identification, from July 2018 to present, of the current and previous rates of reimbursement by insurers for remote patient monitoring and remote therapy monitoring that occurs by use of the Accused Products, where any part of the use occurs in the United States.

11. Identification, from July 2018 to present, of the current and previous rates of reimbursement by insurers for analysis or other use of the patient data obtained by use of the Accused Products, where any part of the use occurs in the United States.

12. Identification, from July 2018 to present, of the current and previous rates paid by third parties, including Verily and/or Primasun, for analysis, access to, or other use of the patient data obtained by use of the Accused Products.

13. Identification of how ResMed uses, analyzes, or processes the patient data collected by use of the Accused Products.

14. Transfer, storage, and use of patient data obtained by use of the Accused Products.

15. The type(s) of signal processing ResMed uses to calculate symptom data or other forms of data in the PAP Devices used in the Accused Products.

16. The type of patient data collected by the Accused Products that is shared with, or given access to third parties, including patient data being used for artificial intelligence or patient signatures related to disease states.

17. The nature of the commercial relationship between ResMed and any third party who receives, uses, or accesses patient data collected by the Accused Products, including patient data being used for artificial intelligence or patient signatures related to disease states.

18. All agreements to which ResMed is a party that include the transfer or licensing of any rights to or under any patent relating to the technology of the Asserted Patents, including the identity, negotiation, terms, and the individuals involved relating to such agreements.

19. Technology or patent license and agreements of third-party licenses, and of standard industry licensing rates and licensing practices, both in and out of the litigation context, which ResMed is aware, for technology related to the Asserted Patents.

20. ResMed's technology and patent licensing policy and procedures, including an identification of persons knowledgeable of such policies and procedures.

21. Technology or patent license agreements relating to the Accused Products, including the identity, negotiation, terms, and the individuals involved relating to such agreements.

22. The sales and revenues for the Accused Products generated from 2016 to the present.

23. The actual or forecasted profitability of the Accused Products since 2016.

24. The and net and gross profit margins of the Accused Products since 2016.

25. The gross and net revenue, billings, bookings, costs, expenses, pricing, volume, and gross and net profits generated by development or offer for sale of the Accused Products, broken down on a quarterly basis, the type of cost or expense, the place of development, pricing, costs, expenses, and offers for sale.

26. The costs associated with the Accused Products from the year 2016 to the present, including costs relating to research and development, operation and maintenance, marketing and advertising, and employee salary for ResMed's developers working on the Accused Products.

27. All royalties, profit sharing, revenue sharing, kickbacks, and consideration received by ResMed from any use of the Accused Products.

28. All royalties, profit sharing, revenue sharing, kickbacks, and consideration received by any third parties, including medical providers, from any use of the Accused Products.

29. The number of units of Accused Products provided for free or at a discounted rate as a promotion with a purchase of another product, including the amount of any such discount.

30. Identification of all sources of revenues attributable to the Accused Products, including any add on sales due to the data generated from using the Accused Products.

31. Identification of the data ResMed collects and/or obtains from any use of the Accused Products and any revenues or monetary value that ResMed derives from such collection.

32. Identification of the data medical providers collect and/or obtain from the Accused Products and any revenues or monetary value that ResMed derives such collection.

33. The number of subscriptions and/or licenses to software technologies, solutions, and/or services included within the Accused Products from the date of release of each respective software technologies, solutions, and/or services to the present.

34. The number of downloads and/or installations of software technologies, solutions, and/or services included within the Accused Products from the date of the release of each respective software technologies, solutions and/or services to the present.

35. The forecasted or projected revenues from the use of the Accused Products since 2016.

36. Any savings or reductions in costs made based on data received from the use of the Accused Products, including data related to inventory decisions and Third Party partnership decisions.

37. The growth rates of revenues for ResMed based on revenues generated from the use of the Accused Products from 2016 to the present.

38. How ResMed obtains revenue from its customers and medical providers.

39. Revenues associated with use of the Accused Products broken out by country, including the identification of the total revenue (gross and net), billings (gross and net), profits (gross and net), number of units or software licenses, costs (including manufacturing and R&D

costs), expenses and whether any of the foregoing is related to a sale to or use by the U.S. Government.

40. Revenues that ResMed receives from any software products or services sold, rented, bundled, monetized, or used with the Accused Products.

41. Identification of codenames or internal product labels/shorthand associated with each of the Accused Products as used in ResMed's financial accounting systems or databases.

42. The date each of the Accused Products was first made available, sold or offered for sale.

43. All valuations performed by or on behalf of ResMed relating to the Accused Products.

44. Any business plans, strategic plans, business strategy reports, cost/benefit analyses, management reports, focus group materials, and market research related to the Accused Products.

45. ResMed's sales strategies with respect to the Accused Products, including any promotion of the benefits of the Accused Products.

46. ResMed's marketing strategies with respect to the Accused Products, including any presentations, product overviews or training relating to the Accused Products.

47. ResMed's evaluation of its market share relating to the Accused Products, including identification of the relevant market(s) in which the Accused Products compete, identification of other competitors in the same market(s), and any competitive analyses, forecasts, reports, surveys, or studies relating to the Accused Products.

48. Any market reports, industry reports, analyses, surveys or studies related to competition for the Accused Products.

49. All activities that ResMed (or any third party on behalf of ResMed) has engaged in with respect to the advertising and/or marketing of the Accused Products.

50. All activities that ResMed (or any third party on behalf of ResMed) has engaged in with respect to customer experience management for the Accused Products, including activities concerning customer experience strategy, understanding, measurement, governance, and culture.

51. All activities that ResMed (or any third party on behalf of ResMed) has engaged in with respect to providing training, instructions, technical support, and encouragement to medical providers and its customers on the use of the Accused Products, including any instructions, product manuals, guides, videos and other materials ResMed uses to explain to its customers how to use the Accused Products.

52. Testing, including quality assurance, of the Accused Products, including the identity of persons with primary responsibility for such testing and quality assurance.

53. The geographical locations (i.e., countries) where ResMed offers to its customers, uses, tests, develops, sells, and supports the Accused Products.

54. The collaboration between ResMed and any Third Parties relating to the Accused Products, including the timing and nature of the collaboration and the identity of the persons involved in and knowledgeable regarding the collaboration.

55. Why ResMed offers the Accused Products to its customers, benefits to ResMed's customers from the Accused Products, and the impact of the Accused Products on ResMed's market share and revenues.

56. The date and circumstances surrounding ResMed's first knowledge or awareness of CleveMed, CleveMed's products, the Asserted Patents, and CleveMed's efforts to obtain

patents to protect its technology and inventions, including the identity of the persons involved and any discussions, documents, communications, investigations, diligence, or analysis conducted by ResMed or on its behalf regarding CleveMed, CleveMed's products, and the Asserted Patents.

57. ResMed's evaluation of CleveMed, CleveMed's products, and the Asserted Patents, including any internal communications mentioning CleveMed, CleveMed's products, and the Asserted Patents.

58. Any communications, discussions with, or documents exchanged internally at ResMed or between ResMed and any Third Parties regarding CleveMed or the Asserted Patents, and the identity of any individuals involved in such communications, discussions, or exchanges of documents.

59. Steps taken by ResMed to investigate whether the Accused Products infringe the Asserted Patents, including any testing of the Accused Products.

60. ResMed's responses to CleveMed's discovery requests served in this action, including an identification of all evidence supporting those responses and all individuals who provided any information for those responses.

61. The factual basis for the existence and nature of any alleged non-infringing alternatives or design arounds to the inventions of the Asserted Patents, including the cost of implementing such alternatives or design-arounds, how such costs were calculated, the feasibility of, customer acceptance of, and time to implement such non-infringing alternatives or design-arounds, and any attempts by ResMed to design around or avoid infringement of the Asserted Patents.

62. The factual basis for ResMed's affirmative defenses including allegations of non-infringement and invalidity of the Accused Patents, including the identity of any products or services sold or offered by ResMed that it contends are prior art.

63. ResMed's organizational structure including the divisions and persons within ResMed responsible for managing the development and maintenance of the Accused Products.

64. ResMed's search for and production of all documents in this case, including the identification of any custodians and a description of any databases, file systems, document collections, or archives that were searched and who is capable of authenticating said documents.

65. Persons with knowledge of the topics set forth in this notice.

66. Documents within ResMed's possession, custody, or control concerning the topics set forth in this notice.

67. ResMed's document retention and collection efforts.

|  |  |
|---|---|
| Philip A. Rovner (#3215)<br>Jonathan Choa (#5319)<br>POTTER ANDERSON &<br>CORROON LLP<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE 19899<br>(302) 984-6000<br>provner@potteranderson.com<br>jchoa@potteranderson.com<br><br>Dated: June 7, 2023 | By: */s/ Jennifer L. Gilbert*<br>Paul J. Andre<br>Lisa Kobialka<br>James Hannah<br>Jennifer L. Gilbert<br>Timothy Layden<br>Sabah Khokhar<br>KRAMER LEVIN NAFTALIS<br>  & FRANKEL LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA 94065<br>Telephone: (650) 752-1700<br>pandre@kramerlevin.com<br>lkobialka@kramerlevin.com<br>jhannah@kramerlevin.com<br>jgilbert@kramerlevin.com<br>tlayden@kramerlevin.com<br>skhokhar@kramerlevin.com<br><br>Benu Wells<br>KRAMER LEVIN NAFTALIS<br>  & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 715-9100<br>bwells@kramerlevin.com<br><br>*Attorneys for Plaintiff,*<br>Cleveland Medical Devices, Inc. |

16

**Exhibit 1**
**Pg. 16**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, a complete copy of the **PLAINTIFF CLEVELAND MEDICAL DEVICES INC.'S NOTICE OF 30(b)(6) DEPOSITION OF DEFENDANT RESMED INC**. was served via electronic mail upon the following counsel of record for Defendant ResMed Inc.:

Brian A. Briggs (Bar No. 5591)
Angela C. Whitesell (Bar No. 5547)
**DLA PIPER LLP (US)**
1201 Market Street, Suite 2100
Wilmington, DE 19801-1147
brian.biggs@us.dlapiper.com
angela.whitesell@us.dlapiper.com

Nancy Braman
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
nancy.braman@dlapiper.com

Sean Cunningham
Tiffany Miller
David Knudson
**DLA PIPER LLP (US)**
401 B Street, Suite 17
San Diego, CA 92101-4297
sean.cunningham@dlapiper.com
tiffany.miller@dlapiper.com
david.knudson@dlapiper.com

*Attorneys for Defendant*
ResMed Inc.

By: */s/ Jennifer L. Gilbert*
     Jennifer L. Gilbert