# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLEVELAND MEDICAL DEVICES INC., an Ohio Corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RESMED INC., a Delaware Corporation,<br><br>　　　　　　　Defendant. | )<br>)<br>)　C.A. No. 22-794-GBW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF CLEVELAND MEDICAL DEVICES INC.'S
SUPPLEMENTAL RESPONSES TO DEFENDANT RESMED INC.'S
SECOND SET OF INTERROGATORIES (NOS. 15-17)**

Pursuant to Fed. R. Civ. Rules 26 and 33, Plaintiff Cleveland Medical Devices Inc. ("Plaintiff" or "CleveMed"), responds to Defendant, ResMed Inc.'s ("Defendant" or "ResMed") Second Set of Interrogatories ("Requests"). CleveMed makes these supplemental responses herein (collectively "Responses") based solely on its current knowledge, understanding, and belief as to the facts and information reasonably available to it as of the date of the Responses.

Additional discovery and investigation may lead to additions to, changes in, or modifications of these Responses. The Responses, therefore, are given without prejudice to CleveMed's right to supplement these Responses pursuant to Fed. R. Civ. P. 26(e), or to provide subsequently discovered information and to introduce such subsequently discovered information at the time of any trial or proceeding in this action.

**GENERAL OBJECTIONS**

　　1.　　CleveMed hereby incorporates by reference each and every general objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a general objection for emphasis or for some other reason. The failure to include a general

1

Exhibit 3
Pg. 19

**RESPONSE TO INTERROGATORY NO. 15:**

CleveMed incorporates its General Objections and Objections to Definitions and Instructions by reference.  CleveMed objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, common interest doctrine, or any other applicable privilege or immunity.  CleveMed will not disclose any privileged information.  CleveMed objects to this Interrogatory to the extent it seeks information not relevant to the claim or defense of any party.  CleveMed objects to this Interrogatory to the extent it seeks information that is covered by confidentiality agreements with third parties and/or protective orders of other litigations or any other proceedings.  CleveMed objects to this Interrogatory as vague and ambiguous.  CleveMed objects to this Interrogatory as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and neither relevant nor proportional to the needs of this case.  CleveMed objects to this Interrogatory as having multiple subparts and as compound, which should count toward the limits on Interrogatories.

CleveMed is the sole owner of all right, title and interest in the Patents-in-Suit (with the limited exception of paid-up licenses to the U.S. government pursuant to grants awarded by the National Institute of Health, as set forth on the face of the Patents-in-Suit).  Other information requested in this Interrogatory is not relevant to this action and/or protected by the attorney-work product doctrine, the attorney-client privilege, and/or the common interest doctrine.

**INTERROGATORY NO. 16:**

State whether you intend to assert any secondary considerations of nonobviousness in support of any claim of the Patents-in-Suit and/or Related Patents, including without limitation long-felt need for the subject matter of the claim, failure of others to solve a problem solved by

the subject matter of the claim, unexpected results, industry praise, or commercial success, whether you allege any objective evidence of secondary considerations is tied to a specific product, and whether any product embodies the claimed features and is coextensive with them, and if so, explain fully the basis for such assertion, including any alleged nexus to the claim, how any product allegedly embodies the claimed features and is coextensive with them, and identifying any documents or things that relate to such contention and identification of any witness with knowledge of such contention, documents, or things.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16 [SUPERSEDES PRIOR RESPONSES WITH INADVERTENT TYPOGRAPHICAL ERRORS]:**

Subject to and without waiving the foregoing objections, based on information currently available to CleveMed, CleveMed responds as follows:

The technology claimed in the Patents-in-Suit solved long-felt industry needs. Prior to the technology of the Patents-in-Suit, the sleep industry had no ability to effectively deliver efficient and accurate sleep breathing disorder care solutions that can be administered in a subject's home. Additionally, the Patents-in-Suit solve many longstanding problems arising in the sleep industry's shift from in-lab testing and treatment to the more cost-effective home setting, by providing: an at-home sleep disorder breathing diagnosis and treatment solution that treats a subject's sleeping disorder or symptoms based upon their physiological condition as determined by an internal airflow sensor(s) that measures a patient's airflow; an at-home sleep disorder breathing diagnosis and treatment solution that treats a subject's sleeping disorder or symptoms based upon their physiological condition as determined by an internal airflow sensor(s) that measures a patient's airflow and oximetry data; an at-home sleep disorder breathing diagnosis and treatment solution that treats a subject's sleeping disorder or symptoms

and is capable of remote adjustment based upon the calculated symptom data of a severity of the patient's sleeping disorder symptoms and/or an index of a patient's symptoms measured during use of the PAP and transmitted to a remote location; an at-home sleep disorder breathing diagnosis and treatment solution that is capable of calculating of a severity of the patient's sleeping disorder symptoms and/or an index of a patient's symptoms and wirelessly transmitting it to a remote location in order to improve the efficacy of the prescribed treatment; a sleep disorder breathing diagnosis and treatment solution with a monitor that can be easily administered at home, which provides adjunct data, such as respiratory effort, airflow, oximetry and/or body position data, that can be combined with other data from the CPAP for a more comprehensive and extensive data set that is available while a patient is using CPAP at home (where previously there was no such system that could be effectively or easily administered from home or where such a full set of data was available in such a context), which is particularly important and helpful for medical professionals to have when analyzing data for patients with comorbidities; a sleep testing solution that can be prepared and administered by a patient at their home; an at-home sleep testing solution that improves patient mobility while sleeping; an at-home sleep testing solution capable of processing and outputting at-least type III sleep data; and an at-home sleep testing solution capable of recording, displaying, scoring and analyzing physiological signals for sleep studies.

      Prior to the Patents-in-Suit, the industry for sleep breathing disorder care solutions, led by ResMed and Phillips Respironics, failed to develop any product or solution that solved any of these longstanding problems. The product as originally envisioned and tested was not completed due to ResMed's resistance to honor their Development and Marketing agreement with CleveMed. CleveMed introduced its SleepView solution ("SleepView") in or around 2009,

which embodies claims of the '399, '535, '937, '698, '118, '603, and '637 Patents and which CleveMed has marked accordingly. SleepView is a type III sleep system designed to be worn by a patient while they sleep in the comfort of their home. SleepView is capable of recording, displaying, scoring and analyzing physiological signals, as well as generating flexible and customizable reports to aid in the interpretation and diagnosis of sleep studies. SleepView consists of one hardware component, SleepView Monitor, and a software component, SleepView Manager with the SleepView web portal, which was also referred to at times as eCrystal PSG. The SleepView Monitor is a battery powered testing device worn by the patient and is responsible for acquiring the physiological signals from sensors on the body such as airflow, respiratory effort, snore, pulse oximetry, body position, heart rate, and actigraphy. The SleepView Monitor amplifies, samples, and digitizes the physiological signals and stores the data in internal memory. The SleepView Manager software is used to prepare the SleepView Monitor for collecting patient data, and to download the data collected as part of a study. SleepView Manager software is also integrated with the SleepView web portal, which was also referred to at times as eCrystal PSG, that both provide a guided workflow for patient and study management.

      CleveMed's SleepView offers various benefits. The system enables an in-depth sleep test and analysis of multiple data points that can be stored and shared with healthcare professionals. A subject's ability to self-monitor use of the device at home increases the frequency that the subject uses it. The device is more accurate and meaningful than in-lab solutions because it accounts for environmental conditions that may affect a subject's sleep at home, and eliminates disturbances that may result from a subject sleeping away from home. The device is portable and easy-to-use at home, streamlines operations for healthcare providers, and

offers cost-efficient testing solutions for customers.  The web portal of SleepView provides a secure online data management platform, which allows medical professionals to increase the number of subjects they can accurately monitor and treat.  CleveMed's SleepView system provides unexpected results that include improved outcomes for sufferers of sleep related breathing disorders in their treatment and overall health.  The benefits of SleepView have been shown through clinical validation.  *See, e.g.*, CMD 036301-304; CMD 036329; CMD 025414-407; CMD 039888-895; CMD 039659-662; CMD 03896-898.

ResMed copied the technology of the Patents-in-Suit and incorporated this technology into the Accused Products.  ResMed was aware of the technology and instead of licensing the technology, ResMed copied it for its own benefit.  Additional details about this knowledge and copying, and supporting documents, are set forth in CleveMed's response to ResMed's Interrogatory Nos. 4, and ResMed's response to CleveMed's Interrogatory No. 1.  ResMed achieved great commercial success, praise by others, and industry recognition based on the technology in the Patents-in-Suit.  In fact, the patented technology has allowed ResMed to fulfill its "reverse Amazon," where it was a hardware company that turned to software as the primary driver of their $22 billion business.  *See* CMD 016663; *see also, e.g.,* CMD 040176; CMD 040185; CMD 040192; CMD 040202.  ResMed's CEO, Mick Farrell described this move as necessary because business today is about "what you do with the big data" and that "[e]veryone wants healthcare data streamlined and in one spot." CMD 016663; CMD 006863.  To accomplish this, it has been stated that "'ResMed has thrown every best design practice in the book' at helping patients get connected with their medtech devices." *Id.*

Philips Respironics also copied the technology and incorporated this technology into its products.  Philips Respironics has also achieved great commercial success, praise by others, and

16

Exhibit 3
Pg. 24

industry recognition based on the technology in the Patents-in-Suit.  CleveMed garnered numerous accolades and praise throughout the industry for its innovative technology covered by the Patents-in-Suit.  The inventions of the Patents-in-Suit are subject to paid-up licenses by the U.S. Government based on highly competitive grants awarded by the National Institute of Health.  In 2012, SleepView was recognized with a Bronze Edison Award as one of the Best New Products in its Assistive Devices categories.  CMD039618-622; CMD 036205-242; CMD 036251.  The award is referred to as "one of the highest accolades a company can receive in the name of innovation and business success."  Recipients are chosen as the best of the best by top senior business executives, academics, and innovation professionals.  CleveMed was also featured as one of the 10 Most Promising Patient Monitoring Solution Providers – 2015 by Healthcare Tech Outlook for its innovative and comprehensive home sleep testing solution SleepView.  CMD 036244.  In addition, in 2017, CleveMed was featured as one of the ten most valuable healthcare solution provider companies by Insight Success for its home sleep testing offerings.  CMD 036245-250.  CleveMed was praised for its SleepView solution and services that not only exceed clinical guidelines but resulted in surprising growth in home-based testing and diagnosis while reducing costs.  *See* CMD 036322-328 (https://clevemed.com/sleepview/publications/ identifying additional publications in which CleveMed and its technology have received praise and recognition within the industry).  In a recent podcast Emerson Kerr, SomnoMed's Director of Clinical Sales and Education and the president-elect of the American Association of Sleep, described CleveMed as one of the original virtual home testing companies and pioneers of the at-home model of care that was tough to compete with because their technology curated a unique market that differentiated them from the rest because the industry as a whole was up to that level yet.

17

Exhibit 3
Pg. 25

https://www.youtube.com/watch?v=R2XkYqc6C2U.  In that same interview, Robert Miller, the Vice President of Sleep Business at Apria Healthcare characterized CleveMed as one of the leading HST companies in America. *Id.*  Furthermore, the industry's top players have shown strong interest in and praise for the innovative technology of the Patents-in-Suit and sought potential partnerships with CleveMed with respect to this technology.  For a small company like CleveMed, this represents significant validation and recognition of its inventions.  For instance, Midmark saw great value in CleveMed's technology, and in 2011, purchased a minority interest in CleveMed and partnered with CleveMed with respect to SleepView.

ResMed itself has repeatedly expressed interest in CleveMed's technology.  For example, in 2007, ResMed entered into a "Product Development and Marketing Agreement" pursuant to which CleveMed developed a module that allowed for wireless communication with ResMed's S-8 CPAP machine.  CMD 011448.  ResMed has also reached out to CleveMed on multiple occasions regarding CleveMed's offerings, including in or around the spring of 2011 regarding CleveMed's web portal used with SleepView.  In connection with these communications, ResMed, including Mick Ferrell (who was then Senior Vice President of the Global Sleep Strategic Business Unit and is presently CEO of ResMed), suggested to individuals at CleveMed and Midmark (including Midmark's then CEO Anne Eiting Klamar) that CleveMed and ResMed enter into a partnership.  Upon information and belief, on or about June 1, 2011, at SLEEP 2011, the 25th Anniversary Meeting of the Associated Professional Sleep Societies LLC, hosted by the American Academy of Sleep Medicine in Minneapolis, MN, there was oral communication between executives of Midmark and executives of ResMed, in which Mr. Farrell of ResMed looked to Midmark executives as to whether ResMed might invest in and/or purchase a portion of CleveMed.  ResMed reached out to CleveMed again in or around the fall of 2013 regarding

CleveMed's web portal.  ResMed also uses CleveMed's trademark SLEEP VIEW in its manual for the AirSense 11.  *See* CMD 038237-353 at CMD 038246.

The commercial success of the inventions disclosed in the Patents-in-Suit is evidenced by the sales and revenues of the copied solutions brought to market by ResMed and Phillips Respironics. *See, e.g*., RMD-012002.  While CleveMed lacks the market advantages and economic resources that ResMed and Phillips Respironics have to commercialize products, CleveMed has also had substantial commercial success with its home sleep testing solutions, and in particular SleepView.  CleveMed's home sleep testing products, particularly SleepView, are used and consistently praised by various highly reputable health care providers across the United States.  *See, e.g*., CMD 039899-902; CMD 039883-887 ("SleepView Across the USA").  These products have been commercially successful and profitable.  CMD 039771.

Individuals involved in and/or knowledgeable about the information in this response include Brian Kolkowski, Hani Kayyali, Robert Schmidt, Craig Frederick, Matthew Tarler and Sarah Weimer.

Discovery is ongoing. CleveMed reserves the right to supplement its response pursuant to Fed. R. Civ. P. 26(e).  CleveMed will further address this issue by providing expert reports in accordance with the Scheduling Order in this case and incorporates such reports by reference.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

Subject to and without waiving the foregoing general and specific objections, CleveMed responds as follows:

CleveMed incorporates by reference its supplemental infringement contentions served on September 25, 2023, as well as any future supplements or amendments to those contentions. CleveMed also incorporates by reference its expert reports which it will serve in this case

pursuant to the Scheduling Order. CleveMed incorporates by reference its Response and Supplemental Response to Interrogatory No. 18. CleveMed identifies under Rule 33(d) the pending applications and issued patents related to the Asserted Patents, CleveMed has identified to the USPTO each of the prior art references asserted here and they were determined to be cumulative of what was already considered and rejected as invalidating art. CleveMed identifies the following depositions as containing relevant information as well any future depositions of ResMed witnesses: Hani Kayyali (September 13, 2023); Sarah Weimer (September 13, 2023); Brian Kolkowski (September 14, 2023); Craig Frederick (September 19, 2023); Robert Schmidt (September 26, 2023); Mohammad Modarres-Zadeh (October 3, 2023); Manish Ledha (August 22, 2023); Matthew Borer (August 23, 2023); Amila Fernando (August 28, 2023); Anuj Joshi (August 31, 2023); David Mulcahy (August 30, 2023); Mark Buckley (September 1, 2023); Jeff Armitstead (September 1, 2023); Christian Roman (September 4, 2023); Katherine Molony (September 5, 2023); George Koshy (September 5, 2023); Paul Green (September 6, 2023); Michael Pinczuk (September 7, 2023); Stephen Van Lyon (September 14-15, 2023); Brooke Harding (September 19, 2023); Greg Tracy (September 19, 2023); Gregory Dench (September 26, 2023); Brian Hickey (September 26, 2023); and Bob Nadler (September 27, 2023). In addition to the documents cited in earlier responses, CleveMed identifies the following documents as also containing relevant information: RMD-057313; RMD-058811; RMD-091812; RMD-171523; RMD-171528; RMD-171552; RMD-173501; RMD-171336; RMD-173084; RMD-171817; RMD-173135; RMD-173136; RMD-171814; RMD-173146; RMD-172589; RMD-180162; RMD-180163; RMD-181650; RMD-182656; RMD-182657; RMD-198083; RMD-198167; RMD-198169; *The Innovator's Prescription: A Disruptive Solution for Health Care,* Clayton Christensen, 2017.

| | By: | */s/ Jennifer L. Gilbert* |
|---|---|---|
| Philip A. Rovner (#3215) | | Paul J. Andre *(pro hac vice)* |
| Jonathan Choa (#5319) | | Lisa Kobialka *(pro hac vice)* |
| POTTER ANDERSON & CORROON LLP | | James Hannah *(pro hac vice)* |
| Hercules Plaza | | Michael H. Lee *(pro hac vice)* |
| P.O. Box 951 | | Jennifer L. Gilbert *(pro hac vice)* |
| Wilmington, DE 19899 | | Melissa Brenner *(pro hac vice)* |
| (302) 984-6000 | | Timothy Layden *(pro hac vice)* |
| provner@potteranderson.com | | Sabah Khokhar *(pro hac vice)* |
| jchoa@potteranderson.com | | Charles Keller *(pro hac vice)* |
| | | KRAMER LEVIN NAFTALIS |
| | | & FRANKEL LLP |
| Dated: October 3, 2023 | | 333 Twin Dolphin Drive, Suite 700 |
| | | Redwood Shores, CA 94065 |
| | | Telephone: (650) 752-1700 |
| | | pandre@kramerlevin.com |
| | | lkobialka@kramerlevin.com |
| | | jhannah@kramerlevin.com |
| | | mhlee@kramerlevin.com |
| | | jgilbert@kramerlevin.com |
| | | mbrenner@kramerlevin.com |
| | | tlayden@kramerlevin.com |
| | | skhokhar@kramerlevin.com |
| | | ckeller@kramerlevin.com |

Benu Wells
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
bwells@kramerlevin.com

*Attorneys for Plaintiff,*
Cleveland Medical Devices, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 3, 2023, a complete copy of the foregoing **PLAINTIFF CLEVELAND MEDICAL DEVICES INC.'S SUPPLEMENTAL RESPONSES TO DEFENDANT RESMED INC.'S SECOND SET OF INTERROGATORIES (NOS. 15-17)** was served via electronic mail upon the following counsel of record for Defendant ResMed, Inc.:

Brian A. Briggs (Bar No. 5591)
Angela C. Whitesell (Bar No. 5547)
**DLA PIPER LLP (US)**
1201 Market Street, Suite 2100
Wilmington, DE 19801-1147
brian.biggs@us.dlapiper.com
angela.whitesell@us.dlapiper.com

Nancy Braman
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
nancy.braman@dlapiper.com

Sean Cunningham
Tiffany Miller
David Knudson
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
sean.cunningham@us.dlapiper.com
tiffany.miller@us.dlapiper.com
david.knudson@us.dlapiper.com

*Attorneys for Defendant*
ResMed Inc.

                By: /s/ *Jennifer L. Gilbert*
                   Jennifer L. Gilbert
                   KRAMER LEVIN NAFTALIS
                   & FRANKEL LLP
                   333 Twin Dolphin Drive, Suite 700
                   Redwood Shores, CA 94065
                   Telephone: (650) 752-1700
                   Facsimile: (650) 752-1800
                   jgilbert@kramerlevin.com