Exhibit 6

Trials@uspto.gov                                          Paper 13
571-272-7822                              Date: September 25, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

RESMED CORP.,
Petitioner,

v.

CLEVELAND MEDICAL DEVICES INC.,
Patent Owner.

IPR2023–00565
Patent 10,076,269 B1

Before ULRIKE W. JENKS, SHERIDAN K. SNEDDEN, and
CYNTHIA M. HARDMAN, *Administrative Patent Judges.*

JENKS, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

**Exhibit 6**
**Pg. 53**

IPR2023-00565
Patent 10,076,269 B1

## I.   INTRODUCTION

ResMed Corp. ("Petitioner") filed a Petition for an *inter partes* review of claims 1–20 ("the challenged claims") of U.S. Patent No. 10,076,269 B1 (Ex. 1001, "the '269 patent"). Paper 1 ("Pet."). Cleveland Medical Devices Inc. ("Patent Owner") filed a Patent Owner Preliminary Response to the Petition. Paper 6 ("Prelim. Resp."). Petitioner filed an authorized Reply to the Preliminary Response (Paper 11, "Reply"), and Patent Owner filed a corresponding Sur-reply (Paper 12, "Sur-reply").

We have authority under 35 U.S.C. § 314 to determine whether to institute review. *See also* 37 C.F.R. § 42.4(a) (permitting the Board to institute trial on behalf of the Director). To institute an *inter partes* review, we must determine that the information presented in the Petition shows "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). For the reasons set forth below, upon considering the Petition, Preliminary Response, Reply, Sur-reply, and cited evidence of record, we exercise our discretion under 35 U.S.C. § 314(a) to deny institution.

*Real Parties in Interest*

Petitioner identifies itself (ResMed Corp.) and ResMed Inc., as real parties-in-interest. Pet. 1.[1] Patent Owner, Cleveland Medical Devices Inc., identifies itself as the real party-in-interest. Paper 4, 1.

---

[1] Petitioner asserts that ResMed Inc. is a separate entity. Pet. 5, n.1. Because the Petitioner here, ResMed Corp., and the defendant in the district court, ResMed Inc., are closely related (*see infra* Section II.e.) and ResMed Inc. is named here as an RPI, for expediency we refer to both entities collectively as "Petitioner" throughout this Decision.

**Exhibit 6**
**Pg. 54**

IPR2023-00565
Patent 10,076,269 B1

*Related Matters*

The '269 patent is at issue in *Cleveland Medical Devices, Inc. v. ResMed Inc*., Case No. 1:22-cv-00794-GBW (D. Del. filed June 16, 2022). Pet., 1; Paper 4, 1.

*The '269 Patent (Ex. 1001)*

The '269 patent issued on Sept. 18, 2018, from U.S. Application No. 13/440,116, filed April 5, 2012, which is a continuation of U.S. Application No. 11/266,899, filed Nov. 4, 2005, now U.S. Patent No. 8,172,766. Ex. 1001, (10), (21), (22), (45), (63).

The '269 patent is titled "Devices And Methods For Sleep Disorder Diagnosis And Treatment." *Id.* at (54). The '269 patent relates to devices and methods for sleep apnea diagnosis and treatment. *Id*. at (57). According to the Specification, nearly one in seven people in the United States suffers from some type of chronic sleep disorder, which can deteriorate the quality of life and is a major cause of morbidity and mortality in industrial and transportation accidents. *Id.* at 1:27–36.

The '269 patent explains that certain sleep disorders such as sleep apnea can be treated by applying a continuous positive gas pressure to the patient's airway, but the devices for this treatment are expensive and largely ineffective. *Id.* at 2:11–26. The claimed invention analyzes the patient's physiological symptoms and adjusts the treatment based, at least in part, on this analysis. *Id.* at 1:19–23, 2:38–52. According to the Specification, the claimed invention combines a continuous positive airway pressure (CPAP) device with sensors that detect the patient's physiological condition, including parameters related to a patient's breath, such as respiratory airflow and effort, blood oxygenation levels, and breathing parameters, and

3

Exhibit 6
Pg. 55

IPR2023-00565
Patent 10,076,269 B1

automatically adjusts the airflow rate for the benefit of the patient. *Id*. at 3:65–4:4, 5:35–40, 6:10–7:30.

According to disclosed embodiments, diagnostic readings from pulse oximeters and/or airflow sensors are combined to determine sleep disorder symptom data (*id*. at 4:37–42), which is transferred to a medical professional, displayed to the user, and/or used to adjust the patient's treatment. *See id.* at 9:3–37, 19:15–26 (using pulse oximetry and airflow data in combination with a CPAP); *id*. at 3:9–27, 7:27–43 (using a combination of airflow data, pulse oximetry, and respiratory effort with a CPAP to adjust the treatment of a patient requiring chemical treatment in addition to traditional CPAP therapy); *id.* at 2:63–3:8, 4:10–19, 4:28–36, 18:60–19:7, 20:9–18 (using airflow data and a CPAP to analyze and wirelessly send the patient's data and allowing for remote adjustment to the patient's treatment); *id.* at 22:29–59.

Figure 1 is reproduced below.



*Fig. 1*

Figure 1 shows a part of the claimed diagnostic device of a sleeping disorder treatment system of the present invention depicting wireless transfer of patient data. *See id*. at 5:65–67. In particular, Figure 1 shows external input 12 received from sensor 14. Although one sensor is shown, signal processing

4

**Exhibit 6**
Pg. 56

IPR2023-00565
Patent 10,076,269 B1

module 16 is capable of using multiple sensors. *Id.* at 8:60–64. The signal

processing module 16 generates and wirelessly transmits the signal 18 to a

base station, where it is demodulated. *Id.* at 8:63–9:10.

Figure 8 is reproduced below.



*Fig. 8*

Figure 8 shows a schematic view of an embodiment of the claimed sleep

disorder treatment system. *Id.* at 5:20–21. In Figure 8, subject 410 is

attached to sensors 420, 424, 418, and 426. *Id.* at 23:20–21. The subject is

wearing respiratory mask 412 which is connected to positive air pressure

device 428. *Id.* at 23:21–24. Diagnostic device 441 receives data from the

5

Exhibit 6
Pg. 57

IPR2023-00565
Patent 10,076,269 B1

sensors and based on the data, the flow of air to the subject is adjusted. *See id.* at 23:18–41.

    *a) Illustrative Claim*

Claim 1 of the '269 patent is reproduced below:

1. A positive airway pressure (PAP) sleep disorder treatment system comprising:

a signal processing module comprising a first input adapted for connecting to a pulse oximeter sensor with a signal, electronics adapted for filtering and processing the signal, and an output adapted for outputting pulse oximetry sensor data;

a PAP device adapted for treating a subject's sleep disorder, the PAP device with a separate enclosure from the signal processing module further comprising:

    a blower having an air output,

    a second input adapted for receiving the pulse oximetry sensor data from the output of the signal processing module,

    an airflow sensor internal to the PAP device adapted for measuring the respiratory airflow data of a subject using the PAP device, and

    a processor adapted for receiving the pulse oximetry sensor data from the second input and the respiratory airflow data from the airflow sensor and calculating based in part on both the respiratory airflow data and the pulse oximetry sensor data, sleep disorder symptom data of a level of severity and/or an index of a level of severity of the subject's sleep disorder symptoms measured during use of the PAP device;

a mask or a nasal cannula; and

a module transceiver adapted for receiving and transmitting the sleep disorder symptom data of the

6

Exhibit 6
Pg. 58

IPR2023-00565
Patent 10,076,269 B1

> level of severity and/or the index of the level of
> severity of the subject's sleep disorder symptoms to a
> remote location.

*Id.* at 23:51–24:13.

*Prior Art*

Petitioner relies upon the following prior art references (Pet. 29–45).

| Reference | Date | Exhibit No. |
|---|---|---|
| Genger et al., WO 02/078775 A2 ("Genger"). | Oct. 10, 2002 | 1005 |
| Schmidt et al., U.S. Patent No. 6,167,258 ("Schmidt") | Dec. 26, 2000 | 1006 |
| Westbrook et al., U.S. 2002/0165462 A1 ("Westbrook") | Nov. 7, 2002 | 1007 |
| Farrell et al., WO 2005/096737 A2 ("Farrell") | Oct. 20, 2005 | 1008 |
| Paradiso et al., *Wearable Health Care System for Vital Signs Monitoring*, 4th Annual IEEE Conf. on Information Technology Applications in Biomedicine, (2003). ("Paradiso") | April 24, 2003 | 1009 |
| Stahmann et al., WO 2005/028029 A2 ("Stahmann") | March 31, 2005 | 1010 |
| Edgar et al., U.S. 2005/0171160 A1 ("Edgar") | Aug. 4, 2005 | 1011 |
| Kocinski, U.S. 2003/0236450 A1 | Dec. 25, 2003 | 1012 |
| Guilleminault et al., *Obstructive sleep apnea syndromes*, Med. Clin. N. Am. Vol. 88, No. 3 (May 1, 2004), pp.611–630. ("Guilleminault-2004") | May 1, 2004 | 1013 |
| Bluetooth Ver.1.0B (Parts A and B) (November 1999) ("Bluetooth") | Nov. 1999 | 1017 |

*Asserted Grounds of Unpatentability*

Petitioner challenges the patentability of claims 1–20 of the '269

patent on following grounds:

Exhibit 6
Pg. 59

IPR2023-00565
Patent 10,076,269 B1

| Claim(s) Challenged | 35 U.S.C. §[2] | Reference(s)/Basis |
|---|---|---|
| 1–3, 5, 7 | 103 | Genger, Schmidt, Westbrook Farrell |
| 4, 6 | 103 | Genger, Schmidt, Westbrook, Farrell, Paradiso |
| 8–11, 13 | 103 | Stahmann, Edgar |
| 12 | 103 | Stahmann, Edgar, Schmidt |
| 14 | 103 | Stahmann, Edgar, Paradiso |
| 15, 16, 18, 19 | 103 | Kocinski, Farrell, Bluetooth |
| 17 | 103 | Kocinski, Farrell, Bluetooth, Guilleminault-2004, Westbrook |
| 20 | 103 | Kocinski, Farrell, Bluetooth, Paradiso |

Pet. 3–4. In support of its patentability challenge, Petitioner relies on the Declaration of Jacob Sharony, Ph.D. (Ex. 1004).

## II.   ANALYSIS

*Discretionary Denial Under § 314(a)*

The Board has discretion not to institute an *inter partes* review. *See* 35 U.S.C. § 314(a) (authorizing institution of an *inter partes* review under particular circumstances, but not requiring institution under any circumstances); 37 C.F.R. § 42.108(a) (stating "the Board may authorize the review to proceed") (emphasis added); *Harmonic Inc. v. Avid Tech, Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) (explaining that under § 314(a), "the PTO is permitted, but never compelled, to institute an IPR proceeding").

---

[2] The Leahy-Smith America Invents Act ("AIA") included revisions to 35 U.S.C. § 103 that became effective on March 16, 2013. Because the '269 patent issued from an application filed before March 16, 2013, we apply the pre-AIA versions of the statutory basis for unpatentability.

8

Exhibit 6
Pg. 60

IPR2023-00565
Patent 10,076,269 B1

We consider several factors when determining whether to deny institution under § 314(a) based on a parallel district court proceeding, specifically:

1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;

2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

3. investment in the parallel proceeding by the court and the parties;

4. overlap between issues raised in the petition and in the parallel proceeding;

5. whether the petitioner and the defendant in the parallel proceeding are the same party; and

6. other circumstances that impact the Board's exercise of discretion, including the merits.

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 5–6 (PTAB Mar. 20, 2020) (precedential) ("*Fintiv*").

In exercising discretion under 35 U.S.C. § 314(a), we are mindful of the stated purpose of the AIA—namely, to improve patent quality and make the patent system more efficient by the use of post-grant review procedures. *See* 35 U.S.C. § 311 et seq. Moreover, as stated in the Board's Consolidated Trial Practice Guide,[3]

> [t]he Director's discretion is informed by 35 U.S.C. §§ 316(b) and 326(b), which require the Director to "consider the effect of any such regulation [under this section] on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter."

---

[3] PTAB Consolidated Trial Practice Guide (Nov. 2019) ("CTPG"), *available at* https://www.uspto.gov/TrialPracticeGuideConsolidated.

9

Exhibit 6
Pg. 61

IPR2023-00565
Patent 10,076,269 B1

CTPG 56. We also are mindful of the requirement to construe our rules to "secure the just, speedy, and inexpensive resolution of every proceeding." 37 C.F.R. § 42.1(b); *Deeper, UAB v. Vexilar, Inc.*, IPR2018-01310, Paper 7 at 42 (PTAB Jan. 24, 2019) (informative).

   a) *Factor 1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted*

The '269 patent is involved in a pending parallel proceeding in the district court of Delaware. In addition to the '269 patent, the Delaware proceeding also challenges unrelated U.S. Patents 10,028,698; 10,426,399; 10,478,118; 10,925,535; 11,064,937; 11,202,603; 11,234,637 not challenged in any IPR petition.

A district court stay of a litigation pending resolution of a Board trial allays concerns about inefficiency and duplication of efforts, a fact which weighs strongly against exercising the authority to deny institution. *Fintiv*, Paper 11 at 6.

Patent Owner argues that Petitioner did not seek a stay of the co-pending Delaware proceeding, and, given the current stage of that proceeding and that Petitioner has only challenged one of the seven asserted patents in Delaware, it is unlikely that a stay would be granted now. Prelim. Resp. 10; Sur-reply 4–5 ("Judge Williams has previously explained that he will not stay a case when a trial involves multiple issues not addressed in the IPR (as is the case here)."); *see also* Reply 4 (acknowledging that neither party requested a stay in the Delaware proceeding).

We will not speculate as to whether the judge in the district court would grant a motion to stay. Accordingly, this factor is neutral.

**Exhibit 6**
**Pg. 62**

IPR2023-00565
Patent 10,076,269 B1

b) *Factor 2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision*

If a district court's trial date is earlier than the Board's projected statutory deadline for a final written decision, the Board generally has weighed this fact in favor of exercising discretion to deny institution. *Fintiv*, Paper 11 at 9. Here, the district court has set its trial date for August 26, 2024, approximately one month before our deadline to reach a final decision. Ex. 2001, 1 (district court's scheduling order).

Petitioner, however, contends that based on the most recent median time-to-trial statistics for Delaware, trial would be expected to occur in approximately March 2025. Reply 5 ("[T]he median time to trial is 33.7 months in the District of Delaware where the parallel district court case was filed on June 16, 2022."). Petitioner also contends that Patent Owner has not explained why it "ignore[d] the directive in the Interim Guidance[4] regarding the proper determination of an expected trial date." Reply 7–8.

We are not persuaded by Petitioner's contention that Patent Owner ignored the Interim Guidance. Patent Owner argues that in the District of Delaware, the 33.7 months to trial data does not accurately reflect Judge Williams' median time-to-trial, which Patent Owner contends is 25.6 months. Sur-reply 5–6; *see also* Prelim. Resp. 5–6 (arguing that a specific judge's time to trial can reasonably be considered (citing *Vector Flow, Inc. v. HID Global Corp.*, IPR2023-00353, Paper 8 (PTAB July 17, 2023)). We find that in the circumstances here, the scheduled trial date is a better

---

[4] Memorandum, Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with Parallel District Court Litigation (USPTO June 21, 2022) ("Interim Guidance"), *available at* www.uspto.gov/sites/default/files/documents/interimproc_discretionary_denials_aia_parallel_district_court_litigation_memo_20220621_.pdf.

Exhibit 6
Pg. 63

IPR2023-00565
Patent 10,076,269 B1

measure of the expected trial date than the median-time-to-trial statistic because, as the Board recently noted, Judge Williams "was recently confirmed to the bench, and he currently presides over approximately 24% fewer patent cases than the average number of patent cases for the other judges in the district." *See Vector Flow, Inc. v. HID Global Corp.*, IPR2023-00353, Paper 8 (PTAB July 17, 2023) at 20 (citations omitted); *see also* Prelim. Resp. 11; Ex. 2001, 15.

The trial date in the Delaware district court is set for one month before a final decision is due in this case. Ex. 2001, 15. We generally take courts' trial schedules at face value absent sufficient evidence to the contrary. Here, apart from speculation, we have no reason to believe that the scheduled trial date will be postponed. Because the district court trial is currently scheduled to begin approximately one month before our deadline to reach a final decision, this factor weighs in favor of exercising discretion to deny institution.

c) *Factor 3. investment in the parallel proceeding by the court and the parties*

We consider the amount and type of work already completed in the parallel litigation by the court and the parties at the time of the institution decision. *See Fintiv*, Paper 11 at 9.

Petitioner argues that neither the district court nor the parties have invested substantially in the merits of the invalidity positions that are at issue in this IPR. Reply 5. "[T]he district court has not issued any claim construction order and has not indicated when it will issue such an order, . . . [and] fact discovery is not set to close until September 26, 2023." *Id.*

Patent Owner, on the other hand, contends that "[b]y August 1, 2023, the parties will have already exchanged preliminary infringement and

Exhibit 6
Pg. 64

IPR2023-00565
Patent 10,076,269 B1

invalidity contentions, completed Markman briefs, conducted a Markman hearing, surpassed its substantial completion of document production, and begun taking fact depositions." Prelim. Resp. 13 (citing Ex. 2001, 17). Fact discovery and opening expert reports will be completed in 2023. *Id.*

We recognize that the parties and the court have expended considerable resources to date on the parallel case. For example, the parties have submitted fully briefed arguments on claim construction, the district court has conducted a *Markman* hearing but not yet issued a claim construction order, and fact discovery is set to be completed at about the time the decision to institute is due to mail. Ex. 2008 (joint claim construction brief). However, much work still remains to be done. On balance, this factor weighs marginally, if at all, in favor of exercising discretion to deny institution.

  d) *Factor 4: overlap between issues raised in the petition and in the parallel proceeding*

This factor evaluates "concerns of inefficiency and the possibility of conflicting decisions" when substantially identical prior art is submitted in both the district court and the *inter partes* review proceeding. *Fintiv*, Paper 11 at 12.

Petitioner argues that the Petition challenges ten claims not asserted in the district court. *See* Reply 6; *compare* Ex. 2003, 2 (asserting claims 1, 4, 5, 8, 9, 13, 15, 16, 17 and 18), *with* Pet. 3–4 (challenging all claims). Specifically, Petitioner contends that certain subject matter found in dependent claims 2, 3, 11, and 12 is not at issue in the district court. *See* Reply 6.

Patent Owner contends that Petitioner is challenging the same claims in this IPR that it is challenging in the district court, and "the primary

**Exhibit 6**
Pg. 65

IPR2023-00565
Patent 10,076,269 B1

references are the same and the arguments [are] substantially similar in both proceedings." Prelim. Resp. 15–16 (*compare* Ex. 2002, 1, 17–20 (Amended Invalidity Contentions), *with* Pet. 3–4). Patent Owner further contends that just because ten claims are challenged in the IPR but not asserted in the district court does not preclude a finding of substantial overlap. Sur-reply 7. Patent Owner further asserts that Petitioner "provides no explanation as to why the subject matter differs significantly in some way to provide a meaningful distinction between the two proceedings." Sur-reply 7–8 (citing *Next Caller Inc. v. TRUSTID, Inc.*, IPR2019-00961, Paper 10 at 14 (PTAB Oct. 16, 2019) for the position that the Board exercised discretion to deny institution even though the petition contained more claims than asserted in the district court).

In addition, Patent Owner contends that Petitioner has not provided a *Sotera*-type stipulation. *Id.* (*citing Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A) (finding that the petitioner's stipulation "mitigates any concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions," where the petitioner "broadly stipulates to not pursue '*any ground* raised or that could have been reasonably raised'")).

Given the overlap in claims, prior art, and arguments between this IPR and the district court, we have concerns regarding duplicative efforts and potentially conflicting decisions (including due to Petitioner's different claim construction positions in the district court and in this IPR, *see infra* Section II.f). We agree with Patent Owner that a *Sotera*-type stipulation would have helped ensure that an *inter partes* review functions as a true alternative to litigation in relation to grounds that could be at issue in an

14

**Exhibit 6**
**Pg. 66**

IPR2023-00565
Patent 10,076,269 B1

*inter partes* review. Here, Petitioner could have expressly waived in district court any overlapping patentability or invalidity defenses but chose not to. Given the facts here, this factor weighs in favor of exercising discretion to deny institution.

  e) *Factor 5: whether the petitioner and the defendant in the parallel proceeding are the same party*

  We next consider whether the parties in the parallel proceeding are the same parties. *See Fintiv*, Paper 11 at 6. Patent Owner contends that ResMed Corp. (i.e., Petitioner) is a subsidiary of ResMed Inc., which is the defendant in the parallel litigation proceeding. Prelim. Resp. 18; Pet. 1 ("ResMed Corp. ('Petitioner') identifies ResMed Inc. as a real party in interest without conceding that it is, in fact, a real party in interest."); Reply 7 ("the defendant in the district court proceeding is named as an RPI here").

According to Petitioner:

> Both ResMed entities have consistently maintained in district court proceedings that ResMed Inc. was improperly named as a defendant because it is only a holding company. Accordingly, ResMed Corp., not ResMed Inc., is named here as Petitioner. Because [Patent Owner] has refused to acknowledge this simple truth, ResMed Inc. is named here as an RPI to avoid any RPI-based challenge, thereby subjecting it to the same estoppel provisions as it would be had it been named as a petitioner.

Reply 8. Patent Owner contends ResMed Inc. and ResMed Corp. are related. Sur-reply 8 ("Petitioner does not dispute that it is 'intimately' related to ResMed Inc.").

  Here, there is sufficient evidence in the record that the Petitioner and the defendant in the parallel proceeding are closely related, and indeed, the defendant in the district court proceeding is named as an RPI here. Reply 7. Thus, this factor weighs in favor of exercising discretion to deny institution.

Exhibit 6
Pg. 67

IPR2023-00565
Patent 10,076,269 B1

*f) Factor 6: other circumstances that impact the board's exercise of discretion, including the merits*

Given that our analysis of the *Fintiv* factors thus far weighs in favor of exercising discretion to deny institution, we proceed to assess whether other circumstances impact the board's exercise of discretion, including whether the Petition presents a compelling unpatentability challenge, i.e., a challenge "in which the evidence, if unrebutted in trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence." *CommScope Techs. LLC v. Dali Wireless, Inc.*, IPR2022-01242, Paper 23 (Feb. 27, 2023) (precedential) ("In circumstances where, however, the Board's analysis of Fintiv factors 1–5 favors denial of institution, the Board shall then assess compelling merits. In doing so, the Board must provide reasoning sufficient to allow the parties to challenge that finding and sufficient to allow for review of the Board's decision.").

Patent Owner contends that Petitioner has taken inconsistent claim construction positions regarding the scope of the '269 patent claims, which could lead to inconsistent results at the Board and the district court. Prelim. Resp. 7–9, 20. Specifically, Patent Owner contends that Petitioner's "proposed constructions to the District Court conflict with its positions in its Petition regarding the scope of the Challenged Claims." Prelim. Resp. 20; *compare* Pet. 24–25, *with* Ex. 2008 (joint claim construction brief) at 60–63, 69–72. At the Board, Petitioner "seeks to have the terms of the '269 patent construed as broadly as possible when attempting to substantiate its invalidity arguments before the Board while simultaneously arguing that several key terms should be construed as means-plus-function limitations in District Court." Prelim. Resp. 20 (citing Ex. 2008 (joint claim construction brief), §§ II.D, F, K).

Exhibit 6
Pg. 68

IPR2023-00565
Patent 10,076,269 B1

We agree with Patent Owner that on the facts of this case, by providing inconsistent positions regarding the proper construction of the claims, Petitioner is not being transparent. *Compare* Pet. 24–25 ("Petitioner does not believe any claim term needs formal construction"), *with* Ex. 2008 at 60–63, 69 ("Several asserted claims recite a 'processor' as a nonce word for the means for performing certain functions, thus invoking means-plus-function claiming under § 112, ¶ 6."), 70–72. The Board applies the same claim construction standard as the district court. 37 C.F.R. § 42.100(b) (2019) ("In an *inter partes* review proceeding, a claim of a patent . . . shall be construed using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)."); *see also Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). The potential for conflicting decisions favors denial. *See Fintiv*, Paper 11 at 12.

Further, Petitioner's strategy undermines its argument that the Petition presents a compelling unpatentability challenge. *See* Reply 7. Petitioner is asking us to review the unpatentability arguments under a construction it already asserted in district court is wrong. Petitioner is free to present arguments in the alternative on claim construction, including arguments with which it disagrees. Petitioner, however, chose not to present alternative claim arguments in its Petition. Under the circumstances in this proceeding, if we determine that the "processer adapted for" limitations are means-plus-functions limitations, we would not be able to determine whether the prior art reads on the claims, because the Petition does not provide explanation under a means-plus-function construction. *See Fitbit Inc. v Koninklijke Philips N.V.*, IPR2020-00771, Paper 14, 24–25 (PTAB Oct. 19, 2020). We are thus left with the choice between alternative claim constructions that would either potentially lead to inconsistent rulings or lead to Petitioner's

17

Exhibit 6
Pg. 69

IPR2023-00565
Patent 10,076,269 B1

arguments set forth in the Petition becoming inapposite or otherwise failing to provide sufficient evidentiary basis to support institution. For this reason, the Petition fails to meet the compelling merits[5] standard, and this factor weighs in favor of exercising discretion to deny institution.

g) *Balancing of the Factors*

We have considered the circumstances and facts before us in view of the *Fintiv* factors. Our analysis is fact-driven, and no single factor is determinative of whether we exercise our discretion to deny institution under § 314(a). Here, Factors 2–6 weigh to varying degrees in favor of discretionary denial, while Factor 1 is neutral. Thus, evaluating the *Fintiv* factors with a holistic view of whether the efficiency and integrity of the system are best served by denying or instituting review, we determine that the specific facts of this case weigh in favor of exercising discretion to deny institution.

## III. CONCLUSION

After considering the evidence and arguments presently before us, we determine that exercising our discretion under 35 U.S.C. § 314(a) to not institute trial is warranted. Accordingly, we do not institute an *inter partes* review.

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is *denied* and no trial is instituted.

---

[5] "[T]he compelling merits standard is a higher standard than the standard for institution set by statute." *CommScope* at 3 (citing *OpenSky Indus., LLC v. VLSI Tech. LLC*, IPR2021-01064, Paper 102, 49 (PTAB Oct. 4, 2022) (precedential)).

Exhibit 6
Pg. 70

IPR2023-00565
Patent 10,076,269 B1

FOR PETITIONER:

Tiffany Miller
Edward Sikorski
James Heintz
DLA Piper LLP
tiffany.miller@dlapiper.com
ed.sikorski@dlapiper.com
jim.heintz@dlapiper.com


FOR PATENT OWNER:

James Hannah
Jeffrey Price
Jenna Fuller
Jeffrey Eng
KRAMER LEVIN NAFTALIS & FRANKEL LLP
jhannah@kramerlevin.com
jprice@kramerlevin.com
jfuller@kramerlevin.com
jeng@kramerlevin.com

**Exhibit 6**
**Pg. 71**